I'll tell you it's Henry Studio, Michael Connell, Joseph Monaghan, Ms. Stacey Flynn, and Danny Appalooza. I'm doing it on behalf of Mr. Clinton Stubbs, Mr. Stephen B. Powell. I'm doing it on behalf of the convenience companies, Mr. Thomas F. Butler. Thank you. Mr. Hill, you may proceed. Thank you. May it please the Court, I'd like to introduce my co-counsel, Jacqueline Guss, Ms. Falkenberg. This is a case involving an employment agreement between our client, whose name is Robert Mitchell, and a company known as Stonecasters. It rises out of a dispute related to a buy-sell agreement where Bob Mitchell agreed to purchase 11.5% interest of stock in Stonecasters and agreed to be employed under the employment agreement for a period of at least 18 months. Under the terms of that employment agreement, Mitchell had negotiated with Stonecaster President Honnold with regard to the terms of the employment agreement and with regard to the cost that would be involved in purchasing 11.5% interest. Counsel, I think we're familiar with the facts of the case. If you don't mind, I have a couple questions, please. Sure. You argue that an accountant should not get the benefit of the two-year statute of limitations unless he was actually providing services in the nature of an accountant at the time that the claim arose or that the omission or act occurred. But if we look at 8.05 of the Illinois Public Accounting Act, it defines accountancy activities rather broadly, does it not? And in fact, talks about including financial or consulting services. So why wasn't Monica providing services in the nature of an accountant when he valued plaintiff's interest? When Monica was retained in this case, he was retained under the terms of the employment agreement, and the employment agreement called for a qualified appraiser to do the valuation of the stock for the parties. With respect to that, Monica then was contacted and asked to do the assignment, and Monica was a member of the National Association of Certified Valuators and Analysts, and he was also a member of the – he was a CPA, he was an accountant. Right. When he got contacted, Monica sent his retention letter to Mr. Honnold, the president of Stonecasters, and that letter is in the record as C-225 through C-227. That was Exhibit J attached to the amended complaint. And in that letter, he laid out what his – what he understood his assignment to be and how he would do it. And in there, he referenced in his August 22 letter, he – to Honnold, he used as a subject the fair market valuation of the ownership interest, and he defined within that report the fair market value and the definition of fair market value that he would be using. And that fair market value involved what a willing buyer would pay and what a willing seller would sell that stock interest for as of a particular date. In other words, the same standard that would be used by an appraiser. Also in that letter, and I think most important here, in other words, everything he referred to had to do with fair market value and willing buyer, willing seller. And he, as your Honor noted, he also was a certified public accountant. But he put right on page three of his engagement letter, and I'll quote, we will not audit or review any financial statements, forecasts, or financial data provided to us. In other words – Well, but 8.0583 talks about providing professional – providing services involving professional skills or competencies and then enumerates what they are. Accounting, which you said was perhaps excluded there are certain accounting functions, but also consulting services. Why isn't valuing a business a consulting service under the Illinois Public Accounting Act? Well, I think if it were determined to be that by this court, the court would be setting a new law with regard to that. There is no case that is interpreted in the state of Illinois that has ever interpreted business valuation services as being those type of services that would be considered to be accounting services under that act. And if you were to do that, you would have the situation where Mr. Modica is both an appraiser and he's an accountant. He's making clear in his engagement letter that he's going to be acting as an appraiser. And any other appraiser, there's all kinds of other members of NACDA, which is the National Association and so forth, who could do the very kind of work that was done here. In other words, they're not analyzing financial data or the kind of things accountants look at there, in fact that he specifically said he wouldn't do. And if it were determined that he had a two-year statute of limitation and somebody else who was a member of NACDA who was not a certified public accountant performed the very same work, committed the very same wrongful act, and then had a five-year statute of limitations, that would be a totally unfair result. I mean, he would not. But these were financial services, were they not? I mean, again, what we're trying to do is statutory interpretation here. And looking at the wording of the statute, I mean, what he was doing, maybe he wasn't auditing books, but he was certainly providing financial services when he valued a business. I don't think so. What he's valuing is the price he's got. There's 11.5 percent interest in the stock. That interest had been purchased based on prior sales of company stock. The Stonecaster answer to interrogatories and the Mitchell affidavit both make clear that when Mitchell bought his 11.5 percent interest, they based it on the prior sales of company stock that each had valued the overall company value at 1.3 million. Mitchell's 11.5 percent was purchased at $149,500, which is 11.5 percent of 1.3 million. So this was just, and I realize he's a certified public accountant as well as a member of NACPA, but he was acting solely as an appraiser here. I guess if you could say that every time an appraiser comes up with an opinion of value based on sales and things of that nature, the way Modica did it here, that it certainly involves finances because it involves dollars, but it's not the kind of activity and it's not the kind of professional services that's unique to accountants. Well, but if we look at the statute, there's also, besides A, 805A, there's a B, which really talks about if someone is performing accountancy services, which we've just seen in three can include financial or consulting services, there can be an overlap and they can be providing valuation services. So the statute says in 3, the activities identified in paragraph 3 of subsection A, 3 being the financial or consulting services, are not restricted to licensed or registered CPAs. So there is an overlap. And that's a very good point. I can't disagree with you that you can certainly make that argument. But, again, this is a case of first impression in the state of Illinois. The trial court judge and counsel for the defendant and myself, none of us could find any case in the state of Illinois that considered the issue of whether or not a person who is both an appraiser and an accountant, when that person is providing what in essence is appraisal services, business valuation services, whether he or she gets the protection of the shortened two-year statute of limitation. And at least from my perspective, and I think what this court should do, this court is going to be the first case that's decided that issue. And if the court were to decide that no, Modica is going to get a two-year, he's going to get a special two-year statute, but John Doe, who isn't a CPA, but who is a business valuation expert who values stock of companies and values businesses, that person is stuck with a five-year statute of limitations. That would be a totally unfair situation. I have no question that the legislature, when they enacted this particular provision, they clearly intended to provide some protection to accountants that others do not give. But I think the clear intent here was to cover accountants when they're clearly performing accounting services. And they laid out what they included, and anything that's directly related to that, you could argue that that applies. But here, business valuation services are so different than those named services that are in there. It just happens that the person that got picked had both – he was involved in both professions. He – Well, let me – go ahead. Are appraisals and business valuations in the context that we're talking about here the same? No, no. Oh, I'm sorry. Appraisals and business valuations. And business valuations. Yes. I would say they are. I mean, the – Okay. Because you just used both terms in that last answer, and it seemed like they were interchangeable. Well, let me ask you then, based upon the engagement letter, if he's not going to be reviewing any financial statements, doing any audits – there was something else that you added – how would he be doing anything that relates to a business valuation or appraisal if he's not going to look at those things? He would be doing it because in – just like an appraiser that values real estate, an appraiser who is a business valuation appraiser has three approaches to value. He either does an income approach, or he does a market approach, or he or she does a cost approach. A cost of replacement? A cost of replacement approach. Thank you. Well, the income approach would seem to require some sort of review of financial statements. Yes, but he made it clear in his engagement letter that he was not going to do that. So what he ended up doing was he then had two approaches that he could use. He could either use a sales approach, which is a market approach, or he could use the cost of replacement approach. What he ended up doing here was he hid the fact that there were prior sales available for him to consider by secretly going to Mr. Honnold, who was the president of Stonecasters, and coming up with a story that's reflected in this email chain that did not get disclosed until July of 2017 where Mr. Modica says, if you tell me those prior sales are not relevant, and you tell me you're not going to produce them, then I won't have to look at them. And the reason that's significant is those sales all reflected a $1.3 million value, and if those sales got used to value this interest, Mitchell would be receiving at least what he paid for it, which was the $149,500, and even more because the value of the company had gone up in the 18-year period. But anyway, he couldn't do the market approach, he said, because he said there were no sales when, in fact, there were. And then he resorted to the only thing that he had left, which was an asset approach, and that resulted in the low value. But he knew there were problems much earlier than that. In fact, when he got the report in January, plaintiff knew that there were problems with Modica's report. Shortly after that, he had his own valuation expert, Hofer, contact Modica. Did he not? There's an e-mail exchange and a letter exchange indicating that there were questions being asked at plaintiff's behest about that report and what it contained and what it didn't contain. Isn't that correct? Isn't that what the record reflects here? There were questions asked, but the report on his face appeared to satisfy those questions after that was done. So there was, from looking at the face of the report, there was nothing on the face of that report that indicated there was a problem because Modica falsely explained on pages 29 and on Exhibit 8 of his report that prior sales were not available to be reviewed because management has told me that they're irrelevant and that they will not produce them. The fact of the matter was he suggested to management, you tell me they're irrelevant and don't produce them and then I'll explain in my report that I didn't have them available and then I'll have to go to this asset approach that will yield a low value. So can this e-mail exchange be characterized as clarification of how to handle the omission of prior sales? I think the e-mail exchange can only be explained in one way and that was that Modica and Honnold had gotten together, had discussed the fact that the sales were a problem and that if he were to consider those sales, he would have to come up with a value of at least $149,500. But he told Mr. Honnold, you tell me they're irrelevant and don't produce them and then I won't have to look at them. But your other option is give them to me, let me look at them. Honnold said, I'll go with the option where I don't have to give them to you. And so he said fine. So then he put that in his report. So that's what he was doing here. To me, under the cases, every reasonable inferences goes in favor of the plaintiff in this case and the reasonable inference is that e-mail exchange that was not discovered until July of 2017 clearly was designed to avoid using comparable sales or prior sales. And prior sales under the NACFA standards are absolutely a requirement of a business valuation appraiser who's a member of NACFA unless they're unavailable. So he put right in his report, the sales were unavailable, therefore I couldn't use them. But he added in there in terms of on the issue of whether or not there was any damage at that point in time caused by not doing it, he had language that he put right on, and I think it's on Exhibit 8, where he specifically said if I get those sales and I do analyze them, that may change my opinion about it. Well, in fact, in June of 2015, when plaintiff decided to sue Stonecasters, that report or that opinion was described then as distorted. And so certainly as of then, plaintiff had to have been on notice that there was a possible claim against Multicut. I respectfully disagree on that point. And the reason is that was described in the complaint as distorted because it was distorted. It was distorted because of the fact that from the face of the report itself, it made clear that he couldn't get the sales. And had he gotten the sales, that might change his opinion of value. He put the blame right on Mr. Honnold by putting that in the report. So that's what distorted it. But plaintiff knew he was injured, didn't know necessarily by whom. And so why didn't the plaintiff name Multicut as a respondent in discovery right then and there? Because there was nothing to indicate that it was a problem that had been caused by Multicut. The problem had been caused by Honnold. Well, but the case law doesn't require that you know that their injury be committed by a certain person. Isn't it injury by injury as opposed to injury by a certain person? Isn't that what the case law demonstrates? I think the Danker case makes it very clear that you have to, under this statute, you have to know that you've been injured and you've been injured by the accountant. Danker specifically, and the accountant was Freedman, or Freeland or Freedman, and in Danker it specifically said that what you have to have is you have to have an injury and you have to know or have reason to know, reasonable belief, that it was done by Freedman. And Freedman was the accountant. Would it be more reasonable to say in order for the statute to start running, you have to know the identity of the person for whom you are speaking, so to speak, in that if you don't know who injured you, how are you supposed to file anything within two years or with any time? So until you know who it is, you either file it against John Doe or you don't file it until you find out who it is. Absolutely. I think you have to do that. And you don't go, I mean, we try to avoid going around filing suits against people that we have no reasonable basis for finding that they're the ones that ought to be sued. But, I mean, here there just wasn't enough information to even make you suspicious that there's a problem. Okay. Thank you. You'll have an opportunity to make rebuttal. Thank you. Mr. Falkenberg. Thank you. May it please the Court, Tom Falkenberg on behalf of Defendant Joseph Modica. Before I begin, does anyone have any questions you'd like me to address? Yes. Would the factual scenario create a question as to whether or not a fraudulent nondisclosure or suppression of the facts would stay the running of the statute? No, it doesn't, Your Honor. The only way you can assert a defense of fraudulent concealment is to specifically plead it as a cause of action. And that hasn't been done. And that's abundantly clear and under the case law in Illinois. You have to specifically plead and prove the allegation. Plead the allegation sufficient to establish a negligent concealment cause of action. That's a separate cause of action or defense that has to be pled. And that has not been done and has not been addressed in any of the briefs. How was Mr. Modica selected? Mr. Modica was selected on the basis of recommendations, which is an important question, recommendations on both sides' accounts. Now, this was a situation where my client, Mr. Modica, was completely disinterested in this transaction. This isn't a situation where he was biased in favor of one and against the other. The terms of the contract specifically provided that each side's, the plaintiff and stonecaster's, accountants would recommend somebody. And it's important to note that it's accountants. Now, both of those people, and Your Honor referenced one of them, both of them are licensed CPAs working for CPA firms. Yet, both of them perform valuation services. And who did they recommend? Mr. Modica. On Mr. Modica's engagement letter, right at the top, which you have, Joseph Modica and Associates, certified public accountants. On the report, Joseph Modica and Associates, certified public accountants. So the two people got together and said, this is the person we agreed, we both agreed Mr. Modica is perfect for this. They knew they were hiring a CPA. They were CPAs, which gets to the very issue of who performs this and whether or not this is an act performed by a CPA. And we looked at the engagement letter, as counsel indicated, correct? And we did. And why should we not follow what counsel suggested in terms of the engagement letter and specifically argued that there were no accounting services performed here, and therefore Mr. Modica was not entitled to the protection of the two-year statute of limitations? How do you respond to that? I respond to that very clearly, Your Honor. The language that he referenced, we will not audit, review, or compile. A review is a term of art for accountants. A review is a standard lesser than an audit when you review financial statements. When you review financial statements, you take a certain set of standards promulgated by the AICPA that are review standards. They are different than audit standards. You look at financial statements in an audit and it says we will not audit. Accountants under AICPA standards must include that language when they're performing services other than audits, reviews, and compilations because they have to make it very clear to the user that we are not looking at the underlying data to give our rubber stamp that the underlying data can be relied on. That's what an audit does. A review gives a lesser opinion that the financial statements themselves are of some value, that they can be used in some fashion, not as high as an audit. And a compilation is an engagement on financial statements where the accountant is merely saying we're putting it in proper financial form and we're not giving any assurance about the accuracy. So all three of those references that counsel made in the engagement letter, those are services specifically performed by accountants on financial statements. The financial statements were not the source of the engagement here. What did happen, as Your Honor correctly pointed out with the question, he did review. When you say they weren't the source, then what was the basis or the form of review or opinion to be gleaned from his machinations? Financial statements of the company were looked at to come up with value. Other things were looked at, the books and records were looked at to determine a value. That's entirely different than somebody saying here are... So are you saying that he wasn't, as a member of the appraiser's institute or whatever the association is called, he was not looking for comparables? He was looking for comparables in the context of the question is whether accountants licensed by ASCPA and under the Illinois Public Accounting Act perform valuation services. That is the direct question, and yes, they absolutely do. And how do we know that? We know that, first of all, because accounting activities under 8.05 specifically say management, financial, or advisory services. We know that because the Supreme Court looked at, just two and a half years ago in Brewton, looked at this very issue and said, well, wait a minute. In Brewton, they're doing estate planning services. And counsel in that case argued that's not an accounting activity. The Supreme Court looked at it and said, wait a minute. The statute says included. When it says including, that means statutory interpretation, including but not limited to. Those are examples. And the Supreme Court looked at estate planning services and said estate planning services are exactly the type of work that's under management or financial consulting that accountants generally perform. Counsel in his response brief argued only attorneys, only accountants do estate planning services. That's absolutely untrue. As we know, attorneys do estate planning services. What are the members of the Association of Appraisers? Are they all CPAs? Are they all accountants? No, and this gets to the very issue as 8.05.3 says. You don't have to be a CPA licensed under the Illinois Public Accounting Act to do evaluation. I readily admit that. I don't fight that at all. You don't have to be. Just like you don't have to be a member of that other organization to do evaluation. You don't have to be a licensed accountant to do tax returns in Illinois. Absolutely, positively do not, as your Honor's point on 3 referenced. You don't have to be. But if you are and you do that work, this statute of limitation applies. That's exactly what the legislature was doing. If accountants, and the Supreme Court looked at this, if accountants are doing this work, they're protected by the Act. Counsel made it a significant issue in the underlying court about, and did so today as well, that this is a case of first impression. This isn't the case of first impression at all. The accountant statute of limitations has been applied to anything of accounting work. Was there a case that we could find that specifically said, well, when a licensed CPA does evaluation, that it's covered by the statute? I understand that you are in agreement with Mr. Helm that if a member of this association makes an appraisal, that they, not being a CPA, are liable for whatever the number of years are that do not relate to the CPA Act. Absolutely. If somebody who's not a CPA does work, they cannot get the protection of a CPA statute of limitations. Just like if somebody who's a non-lawyer does something and gets sued, they're not. If somebody commits professing of a law without a license, which can be a tort and only. There are tort cases on that. If that non-lawyer gets sued, he's not protected by the statute of limitations for lawyers. He's not a licensed lawyer. But if an accountant does that work, then he is. And the sole question is, relating to this issue, is this the type of service that's performed by an accountant? And the answer is, without question, yes. What are the specific accounting functions that are used in an appraisal? In an appraisal, as the Heaton case, the Heaton case is the Indiana case that I cited. When the trial court asked us, do you know of a specific case where an accountant is performing evaluation, and I said, Your Honor, I can't think of the name right now, but there's an Indiana case right on point. And I found it, and Your Honors have that. It's the Heaton case. It specifically says, in evaluation, and they also have a statute. Keep in mind, Indiana, the general statute for torts is six years. It's longer than what ours is. But for accountants, licensed accountants in Indiana, it's shorter. It's one year here. We have two years. They have one year, so it's even a bigger gap. They also define accounting activities, which I pointed out in my brief. Their definition of accounting activities is extremely similar to ours. In that Heaton case, which is certainly persuasive authority, I know it's not binding on Your Honors, certainly persuasive, they look at it and say, this is exactly the type of work that accountants do in valuations. They're assessing, they're consulting, they're analyzing numbers, and they're coming to conclusions based on numbers. Valuations are, without question, inherently a number operation. But they won't look at financials. No, they will. I want to make sure everyone understands when I talk about the financial statements. A financial statement can be given to someone performing a valuation. Here's the financial statements. Consider them in the work you're doing. That's entirely different than here are our financial statements. Audit them and stamp them and say they've been complied in accordance with GAAS, which are the standards that the AICPA promulgates. You have to keep in mind that in Illinois, accountants have to follow the standards of the AICPA because it's a self-regulating profession, and that's what our legislature has said. When you do a valuation, that's why we attach the standards on valuation services promulgated by the AICPA. They specifically mandate that when a CPA performs a valuation, they must do it in conjunction with the AICPA standards. Are there any questions in a CPA exam as to evaluations based upon comparables? Absolutely. There are questions. The CPA work deals with evaluations. I had two issues today. The evaluations are based upon comparable sales and not based upon financial statements? Valuations are based on lots of things. One such thing is financial statements. Another such thing is comparable sales. It's not two things. It's not three things. A good evaluator will tell you anything I can get my hands on, I'll consider, if it's of some worth to me. But it includes, and that's what the Heaton case specifically says, they looked at what valuation services are, and they said, this is exactly the type of work an accountant can do. Can it be done only by an accountant? No. There's no requirement you have to be a CPA to do a valuation, just like there's no requirement you have to be a CPA to do a tax return. But one thing we know without any question, that if a CPA performs tax services and they do it wrongly, without any question, and there's hundreds of cases on this, it's the two-year statute that we're talking about today that governs. Even though any one of us can do a tax return from somebody else, unless we're a licensed CPA, it's not governed by that. The difference is, as a self-regulating profession, the accountant has to adhere to more standards. And that's one of the reasons the legislature saw fit to put out this Public Accounting Act. If you look at the Bruton case, our Supreme Court goes way out of its way to say, we don't really like what's happening. And that dealt with a privilege, the accountant's privilege. It clearly, if you read that case, tells you that they don't really like the result they got to, but they have no choice because the legislature has spoken. And when the legislature has spoken, we as the Supreme Court have to enforce what they do. Parties, if you don't like it, you better go lobby your legislature. Did your client stamp the stamp that you just referred to that is required by state regulation? You said when a CPA supposedly does a financial report or whatever, they have to follow the rules and regulations promulgated by the state, and he has to certify through a rubber stamp? No, by their signature. By their signature, they're saying that's compliant with the AICPA standards, generally accepted auditing standards promulgated by the AICPA. Yes, if you look at the report in issue, it specifically says that it's done in compliance with AICPA standards. If that's the case and the AICPA standards we provided the court specifically say that any accountant, licensed accountant, doing this work has to follow these standards. If somebody else did the work, they wouldn't. What are the standards that relate to comparable sales in the rules and regulations or in the statute, do you know? I can't point to a specific. In the standards that we have, that we've provided to the court, the AICPA standards on valuation services, they will provide what has to be done during a valuation situation. So there's no question in this case, in my mind, that because an accountant did it and somebody else had done it that wasn't a licensed CPA, they wouldn't have the same standards that they have to adhere to, and those standards benefit the purchaser of the product or the person who's using the product because they know the work was done by somebody who has to adhere to these standards. The turn on that is the person performing it under Illinois law clearly gets the benefit of the statute of limitations. Here, he knew. Getting to whether or not he knew or didn't know, he clearly knew when he got the report that he thought it was wrong and that he had a wrongful act. All of the cases say you don't need to know who the... It's done as injury by injury. It is not done defendant by defendant. If you know you've been injured and you believe it was wrongfully caused, that's what's called inquiry notice. And in everything counsel argued in their brief, they completely wipe out the concept of inquiry notice. They completely wipe out should have known. And the trial court did an excellent job of pointing this out and saying, you knew you were injured. You knew you were damaged. There was a universe of two that could have been culpable parties. A universe of two. Stonecasters and the person who generated the report that specifically said in it, I'm not using comparable figures. If you look at the e-mails that raise this issue, I suggested to the court, and that's a different... There's no evil motive associated at all. He's raising, I need comparable sales. The guy, he says, I don't get them. I'm going to put it in my report. I didn't get them. And he says, okay, then put that in your report. That's not an evil motive in any event. It's disclosed to the court. I didn't get comparable sales. The plaintiff knew it as soon as he read it. The statute began as of the day he read it, January 9th of 2015, because he identified right away that, hey, they didn't use comparable sales. But at the bare minimum, what makes this much easier from a triggering date, is we absolutely know that he knew as of June 26th, 2015. It sounds like what you're saying, if this had been timely, your client would have been hung up or put in stocks for failing to obtain the comparables. Absolutely not. We disclosed that we didn't. We complied with standards by disclosing that we did. If somebody won't give it to us, we can't use comparables that don't exist. I thought I heard somewhere during this oral argument that the standards require comparables be taken if they exist. No, I said the standards, which I don't have verbatim memorized, but the standards say what the standards require. Whatever, I said, whatever evaluation expert has available, they will consider and they should consider. It's no different than somebody who's a litigator. Well, did you review these documents? Well, how about these documents? I reviewed whatever was available. What is your definition of available? If he can get his hands on them and they're provided to him. If he didn't. You're getting to the issue, Your Honor, of if he didn't look at them, was he negligent? Your Honor, this is not whether the bear is in the forest or not. This is a question of him asking a question of stonecasters, which is do you have any sales, period? And if they said yes, he said send them to me and tell me what relevance or materiality, significance, what weight should I give them if you think that I shouldn't consider them. Is there something wrong with that concept? He absolutely asked for them in those email exchanges that were gone over. He asked for them and he was told I can't provide them to you. So he said if you can't provide them to me, I'm going to have to disclose. With all due respect, that's not an issue of whether or not this statute of limitations applies or if it's triggered or not. But he certainly knew, plaintiff certainly knew there was an issue with the report written by my client according to his own thinking. Okay, what's the definition of can't? It's cannot. So does can mean physically possible, physically impossible? Is it a may or is it a can? What are the requirements if he is supposed to review comparables? Is he supposed to say I want to see comparables unless it's physically impossible for you to give them to me? I would respectfully submit that that question doesn't get to the issue of what statute of limitations applies or when it triggers. I know it doesn't. The point is that I'm curious about the ethics of the concept of what it is you're supposed to be asking for or demanding. And here he asked for it and he didn't get it and he disclosed. So the user knew upon reading it he didn't get it. But, again, I don't think that gets to the issue. But he let Mr. Honnold make that decision. He gave Honnold the option. Why didn't he just say I need them? He said he didn't give them. He said either you give them to me or I have to put in the report that I don't have them. That's what he had to do. If he didn't give them, he put them in the report. Again, that gets into a negligence-based question as opposed to what's the statute. Okay. Thank you. Your time is up. Thank you. Mr. Helton, you may proceed. I'll go as quickly as I can. Have you ever had an MAI that was also a CPA? No, unless it was Neil King. I think he might have been a CPA as well as an MAI, if I remember. Other than that, I can't think of any. Thank you. First of all, any business valuation appraiser could have done the very same job that was done by Mr. Modica in this case. And the crux of the problem is pointed out by Mr. Falkenberg, and that is in response to your question. He said, yes, that's true. If Joe Blow did the same job and he wasn't a CPA but he was a business valuator, he's stuck with a five-year statute and my client gets a two-year statute. And his client, any way you look at that email exchange, he was not acting equitably. And it's his conduct. And it's under Witherall v. Weimer and under the case that he cited, counsel cited, Whitlock v. Deloitte-Metouche, it's very clear that the own wrongs principle, which is an equitable principle, that would be involved, that would toll the statute of limitations because of the wrong that was committed by him and the clear inference from that email exchange, that should have tolled the statute until July 2017. Because you have to look at this at two different times. From the point of view of Mr. Mitchell, when he's looking at the report when it's received, yes, it's a distorted report because it's distorted and he's laid it right out of there because he said in his original complaint because stonecasters breached the contract with him by not providing the sales that they should have provided because we based our whole value on prior sales. Yes, but then why did he have Hofer talk to Modica? He knew there was something amiss at that point, did he not? I mean, there was a whole long exchange. A letter sent back in return? I don't think it was a question of being anything, of being out of line other than the value. And so he wanted, he sent Ms. Hofer to go to talk to this person to find out what the explanation was. And the explanation was, he really didn't answer much, but basically the explanation, he said, look at the report. That's what he told her. And in the report, he said, I tried to get prior sales because he said, I specifically asked for prior sales. And then he says, but I was told I'm not going to produce them because they're irrelevant. Well, the only reason he was told they're irrelevant and I'm not going to produce them is because Modica said to Honnold, tell me they're irrelevant and don't produce them and then I don't have to look at them. Well, Mr. Honnold wrote on December 30th, hi, Joe, I'm looking for the documentation we discussed. Obviously, this implies that Modica was asking Honnold where the information was. And Honnold wrote back, I'm looking for it. And then a little later that day, Modica says, I understand your comments. However, we have, there are really two options and he outlines the options. Either review the terms of the previous buyout and explain why it is or it isn't an indication of the current value. Or two, I comment that there was a prior buyout. However, the terms were not disclosed because management does not believe it is relevant. I'm okay addressing it either way. And that's totally improper. That totally violates at least three, that violates several. I'm sorry. I'll listen to you. I'm sorry. I'm listening to you, sir. No, the NACLA standards that are part of the record in this case require, and we have it alleged, we've alleged it in the second amendment complaint, the violation of those standards. The buyout standards and having the obligation to make the determination and not having the determination made by the client with respect to whether or not they should or shouldn't be turned over, he gave them the option, he gave Stonecasters the option to turn them over here. And my question is, because I asked your, the other counsel, why did he give them an option? Why did he just say, I can't complete this report without that? Well, I mean, that's a, I suppose that's another argument that you can make. But he, on this apparently, he felt, he apparently felt that there still was one basis for valuation. He was keeping in mind there's three bases and one, the one that was left was an asset valuation, and that's what he chose to do. So on the face of the report, the number is too low. It's not, it's not fair. And there's no question about that. But again, looking at it, the reason isn't because of what Modica, what we knew that Modica had done at the time. It was because what we knew that Stonecasters had done. Stonecasters had not furnished the information. Turns out the Stonecasters were really in the process of turning it over. But Modica came up with this idea of just tell me they're going to roll them and don't produce them, and then I don't have to look at them. You pick the option. Which way do you want to go? And that's not wrong. On that one issue about the tax, raise the issue about somebody could be preparing a tax return. There's a tax, a tax preparer, whether he's a tax preparer, there's, those are not two competing professions here. We've got two competing professions here. We have a business valuation appraiser and we have a certified public accountant. If, if counsel's argument wins the day with regard to the issue of the applicability of that statute, it creates such an unfair situation where Mary Jones or Joe Golo, who are, who are members of NAFTA but not CPA, do the very same thing that Modica does. Modica gets off with a two-year statute and they don't. That's totally wrong. There's no fairness whatsoever in that. The statute doesn't require it. It's, I think, I think the court should look at what's involved here and where it's really, where it really is an accounting, a clear accounting function. The two-year statute plus the discovery. If somebody does this, evaluation, and they're not a CPA, will they be prosecuted for the improper practice of accounting? No, they probably won't. Let's see. In other words, do you have to have an accounting license, CPA or whatever, in order to do the evaluations based upon sales? Because if you do, then your association shouldn't be doing this unless all the member in the association, not your association, the association in question, unless they're all CPAs. That would be the logical argument, the logical way that that would work. Because somebody is practicing without a proper license. Correct? That's correct. One way or another. And here, that's why I think he made it, I think he made it clear when he wrote that engagement letter, I'm not going to be doing those kind of things that are accounting functions. I'm going to be doing a fair market value report because you agree that you're looking for a business valuation appraiser. Everybody referred to him as an appraiser. I mean, throughout, the record is full. He was called an appraiser by everybody involved in this case. It was in the employment agreement it called for the qualified appraiser. They weren't looking for a CPA to do a financial analysis here. They're looking for fair market value, the price a willing buyer, willing seller would agree to. You're saying they weren't looking for anyone with an accounting degree who was going to make reams of financial data that would then indicate a value based upon the income approach? Yes. I think that's true. Or the cost of replacement. If you looked at the expense accounts and the capital accounts and so on and so forth, that might indicate how much it would cost to replace this. Absolutely. Yes. And, Your Honor, just so that it's clear, in interrogatory, in the answers to interrogatories by Stonecasters when they were asked by us to explain what was the basis of the $149,000, $149,500 purchase price that was agreed to when you bought in here, the answer by Stonecasters was the primary basis was the prior sales. So both Mitchell and Stonecasters knew prior sales was the basis going in. Prior sales should be the basis going out. They're looking for a business valuation appraiser to do that. And so the one key piece of evidence ends up being disregarded because Mr. Modica suggests to Honnold a way to get around it. Now, by inference, by inference, he's telling them, if I have to look at those sales, you're going to end up having to pay him at least $149,500. But if I don't have to look at them because if you tell me they're irrelevant, then I can go to something else. That's not in the record, counsel, what you just said. That conversation, that conversation and exchange. Oh, it is. That specific exchange that he suggested, Modica suggested to Honnold. The cases, and I don't have the cases. If you don't give it to me, then you're going to have to pay $149,000. No, that's not in there. Oh, that's what I'm referring to, your comment that you just made. But the cases very clearly say that all reasonable inferences of the facts. That's inference. That's not. I was just clarifying. That's your inference. That isn't in the records. Yes, Your Honor. That is my inference. Okay. No, I have none. Thank you. Your time is up. We'll take the case under advisement. Court's adjourned.